788 P.2d 1208

**In the Matter of the Appeal in MARICOPA COUNTY JUVENILE ACTION NO. JD–500200.**

**No. 1 CA–JV 89–006.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 24, 1989.

Redesignated as Opinion and Publication Ordered Dec. 27, 1989.

Robert K. Corbin, Atty. Gen. by Robert J. Sorce, Asst. Atty. Gen., Phoenix, for appellee Arizona Dept. of Economic Sec.

Anthony Giammarco, Mesa, for appellant Natural Father.

Kessler & Doyle by Eric W. Kessler and Michael J. Doyle, Mesa, for appellee Minor Child.

Robert B. Bushor, Tempe, for appellee Mother.

## MEMORANDUM DECISION *

JACOBSON, Judge.

This appeal is taken by the alleged natural father from the order of the juvenile court adjudicating the minor a dependent. The issue is whether the juvenile court abused its discretion by finding the minor dependent solely because appellant, although claiming to be an otherwise appropriate parent, had not legally established either his paternity or his right to custody. For the reasons stated below, we find that the juvenile court's determination of dependency was reasonable and supported by clear and convincing evidence.[1] We therefore affirm the dependency.

* Editor's Note: Redesignated as an Opinion.
1. Although a preponderance of the evidence standard is customarily used in determining dependency, the clear and convincing standard

## FACTS AND PROCEDURAL HISTORY

The minor child (O.) and three other siblings were removed from their mother's home on August 31, 1988 because of the unfit condition of the home and the mother's neglect of the children. At the time of their removal, the mother was unable to provide any information concerning the children's fathers or who might be available to care for them in her stead. The children were therefore taken into temporary custody by the Department of Economic Security (DES).

On September 1, 1988, the mother informed a DES caseworker that appellant was the father of all four children. On September 2, 1988, appellant told the caseworker that he was "relatively certain" that he was the father of O., but that he was unsure about the other children.

Appellant and the natural mother have never been married and appellant's name does not appear on any of the children's birth certificates. No order of custody exists as to either parent for any of the children nor has either the mother or appellant ever sought or obtained an official determination as to appellant's paternity. When questioned by the caseworker about visitation arrangements, appellant replied that he did not see the children on a regular basis but only "at the mother's whim."

On September 2, 1988, DES filed a dependency petition alleging that the mother was unable and unwilling to provide proper parental care and control of her four children. This allegation was based on the unfit condition of the home and the mother's neglect. The petition also alleged dependency as to appellant because, although he acknowledged his paternity of O., his parenting ability was then unknown.

On September 14, 1988, a home study was conducted, and appellant's home was deemed a suitable placement for O. Therefore, on September 20, 1988, he was granted physical custody of O.

was used in this case because the mother and children are members of the Gila River Indian Community and the Indian Child Welfare Act applies. 25 U.S.C. § 1912(e).

At trial, appellant moved to dismiss the dependency petition as to O. claiming that, following her placement with him, he had proven himself to be an appropriate caretaker. The court refused to dismiss the petition on the ground that no legal determination as to appellant's paternity or right to custody existed.

Following trial, the court found by clear and convincing evidence that all four children were dependent. As to O., the court stated:

> Although [appellant] is providing appropriate parental care and guidance for [O.], he is not legally capable of continuing to provide proper and effective parental care and control for the reason that he does not have any legal right to custody of the child under either existing statutes or custody orders.

Appellant timely appealed. He now claims that the evidence was insufficient to support the finding of dependency, and he asks this court to reverse the trial court's decision as it pertains to O.

## DISCUSSION

Under Arizona law, a child is deemed to be dependent when he or she has been adjudicated to be:

> In need of proper and effective parental care and control and ... has no *parent* or *guardian* willing to exercise or capable of exercising such care or control.

A.R.S. § 8–201(11)(a); A.R.S. § 8–546(A)(4)(a) (emphasis added).

Appellant argues that the evidence is insufficient to show that he is either incapable or unwilling to adequately care for and control the minor child. He asserts that O. should not have been adjudicated dependent because his paternity of her is undisputed and he has clearly demonstrated both his ability and his willingness to provide effective parental care. These factors, appellant asserts, are the only ones the trial court should have considered in determining dependency.

In support of his position, appellant points out that the dependency statutes have no requirement that a putative parent establish paternity or right to custody in order to avoid a finding of dependency. Additionally, he notes that lack of the title "legal father" did not prevent his obtaining physical custody of the minor child less than one month after her removal from her mother's home. Therefore, he argues, the trial court abused its discretion by finding O. dependent solely on the ground that he has no paternity or custody order when he is undisputedly an otherwise appropriate parent.

The state responds that proper and effective parental care necessarily includes the legal ability to exercise the rights of a parent, including the right to protect one's child from abuse and neglect. Such legal ability is necessary in this case, the state claims, because the abusive mother requested dismissal of the dependency petition and return of the child to her custody.

In addition, the state asserts that, unless the father's status is legally established, the abusive mother would have a superior right to custody of O. if a custody dispute should arise. Thus, the state argues, appellant is not legally capable of continuing to provide proper and effective parental care and control.

1. *Whether Appellant's Legal Status Should Have Been Considered.*

■ We respond first to appellant's claim that the trial court erred by injecting arguments relating to lack of legally established paternity or custody into its determination of dependency. Apparently, appellant would have us believe that, because the dependency statutes do not specifically state that a "parent" must be one who possesses a paternity or custody order, therefore one claiming to be a parent and who has otherwise appropriate parenting skills can be a "parent" under the statute. According to appellant's interpretation of the dependency statutes, the only factors the court should have considered were his undisputed willingness and proven ability to physically care for O.

We disagree. The dependency statutes do not and need not enumerate each and

every instance of what constitutes proper and effective parental care and control. However, at the threshold, the one claiming to be able to exercise that care and control must have the legal ability to do so. In this case, effective parental care necessarily includes the continuing ability to protect the child from a potentially abusive mother. A comparable situation existed in *Appeal in Pima County Juvenile Action No. J–77188*, 139 Ariz. 389, 678 P.2d 970 (App. 1983), in which the court affirmed the sufficiency of a dependency petition as to the mother, despite the fact that the mother was undeniably a fit and willing parent, because the mother was legally incapable of preventing further sexual abuse by the father. The court held that the mother's legal inability to protect the child from a potentially abusive father was a sufficient basis for the dependency petition. *Id.* at 393, 678 P.2d at 974. Here, although appellant is fit and willing to parent, if he cannot legally protect O. from the potentially abusive mother, the child may be found to be statutorily dependent.

Appellant also argues that, after DES filed the dependency petition, he was granted physical custody of O. although no circumstances had changed other than the filing of the dependency. Thus, he argues, if he did not need to establish paternity or custody rights to obtain custody at that time, he should not be required to do so now to avoid a finding of dependency.

What appellant ignores is that, absent the dependency petition and temporary grant of custody to DES, his right to custody of O. has no legal basis and the trial court would have had no authority to place the child with anyone other than the parent from whose home she had been removed. A.R.S. § 8–223(D)(4).[2] Appellant's apparent assumption that "no circumstances [had] changed" is mistaken. The filing of the dependency petition and the subsequent

grant of temporary custody to the state changed the rights of the mother vis-a-vis the state and appellant. Before filing, neither the state nor appellant had rights to custody superior to the natural mother. After the filing and the award of temporary custody to DES, the state's right to custody was superior to the mother's and included the concomitant right to authorize and supervise O.'s placement with appellant. Thus, appellant's argument here actually militates against his position that his legal status should not have been a factor in the court's dependency determination.

We hold that the trial court properly considered appellant's legal status in determining O.'s dependency. However, the question remains whether appellant's lack of legal status in fact rendered him incapable of adequately protecting the child from a potentially abusive mother. We turn now to that question.

## 2. *Sufficiency of the Evidence.*

■ Appellant contends that the evidence is insufficient under the clear and convincing standard to show that his lack of legal status renders him unable to adequately protect and care for the minor child. At trial, DES caseworkers testified that, in their opinion, O. would be at risk of physical abuse or neglect if the mother were to regain custody at this time. Appellant claims, however, that aside from the fears of the caseworkers, no evidence whatsoever exists that the mother intends to attempt to regain custody of the child. He claims, therefore, that he is capable of protecting the child even without a legal order of custody or paternity.

To the contrary, the evidence shows that the mother clearly wishes to regain custody. The mother contested the allegations in the petition, moved to have the petition

---

2. A.R.S. § 8–223(D)(4) provides:
   The written notice shall contain the name of the person and agency taking the child into custody and the location from which the child was taken and all the following information:
   ....
   4. A statement that the child must be returned within forty-eight hours excluding Saturdays, Sundays and holidays unless a dependency petition is filed and a statement that a child in temporary custody for examination pursuant to subsection B, paragraph 2, subdivision (b) of this section must be returned within twelve hours unless abuse is diagnosed.

dismissed and consistently maintained the position that she wanted all the children returned to her. Both caseworkers agreed that O. would be at risk of abuse or neglect if the dependency were dismissed because appellant's lack of legal status gave him no legal right to retain custody of O. should the mother decide to assert her right to custody.

Appellant claims that he would protect the child by calling the police if the mother should attempt to take her back. The state correctly responds that such a confrontation would be treated as custodial interference in which the natural mother would have a superior right to custody over a putative father. A.R.S. § 13–1302(B), the custodial interference statute, creates a presumption of legal custody to the mother if a child is born out of wedlock and neither paternity nor custody has been judicially determined.[3]

Admittedly, the mother here presently affirms appellant's paternity. Nevertheless, the juvenile court could have concluded, based upon the evidence, that she likely would change her mind, deny appellant's paternity, and seek to regain custody. In an ensuing custody dispute, appellant would have no more right to custody of O. over the natural mother than any other stranger to the relationship. *See State v. Donahue,* 140 Ariz. 55, 680 P.2d 191 (App. 1984) (unwed father had no right to custody over the mother absent court order to that effect); *Thornsberry v. Superior Court,* 146 Ariz. 517, 707 P.2d 315 (1985) (prior adjudication of paternity or maternity required pursuant to A.R.S. § 25–331 before trial court has jurisdiction to grant custody or visitation to a putative parent).

On appeal from a dependency determination, this court will not substitute its judgment for that of the trial court unless no reasonable evidence exists to support the lower court's finding. *In Re Pima County Juvenile Action No. J–31853,* 18 Ariz.App.

219, 220, 501 P.2d 395, 396 (1972). Our review of the record reveals that the trial court carefully considered the relevant facts and legal arguments before adjudicating O.'s dependency.

We find that the trial court's conclusion that the state presented sufficient clear and convincing evidence of the dependency of O. is supported by the evidence.[4] We therefore affirm.

VOSS, P.J., and KLEINSCHMIDT, J., concur.

---

3. A.R.S. § 13–1302(B) provides:
   If a child is born out of wedlock, the mother is the legal custodian of the child for the purposes of this section until paternity is established and custody is determined by a court.

4. We also note that appellant could have avoided this entire problem by simply seeking to establish his paternity, a step he apparently is unwilling to take.