992 P.2d 616 (1999)
195 Ariz. 24
MERYL R., Guardian Ad Litem for the Child, Appellant,
v.
ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Appellee.
No. 1 CA-JV 99-0068.
Court of Appeals of Arizona, Division 1, Department A.
December 30, 1999.
*617 Janet A. Napolitano, The Attorney General by Judy A. Sheirbon, Assistant Attorney General, Phoenix, Attorneys for Appellee.
Gregory J. Navazo, Phoenix, Attorney for Appellant.

OPINION
FIDEL, Presiding Judge.
¶ 1 Guardian ad litem Meryl R. appeals from the juvenile court's dismissal of her dependency petition on behalf of David D., a thirteen-year-old juvenile. David currently lives by choice with his father, an Arizona resident, but the father lacks legal custody. Legal custody rests with David's mother pursuant to a dissolution decree which was entered in Missouri, her former residence. David's mother has lived in Kansas for the last several years.
¶ 2 Appellant maintains that David is dependent as to his mother on the ground that she has neglected and abused him in the past and is unfit to parent him at present. In contrast, Appellant maintains that David's father is both fit and willing to parent him, but lacks a legal basis for the physical custody that he presently exercises over the boy. Appellant therefore asserts that David is dependent as to his father because his father is legally unable to exercise care and control over David or protect him from a potentially abusive and neglectful mother. Appellant refers to David's status as a "legal dependency." She pursues this dependency as a means to achieve a placement with the father and thus a legal basis for his exercise of care and control. David's father is a party to these Arizona proceedings but his mother is not.
¶ 3 A court-ordered investigation by ADES revealed that dependency proceedings were underway in the mother's home state of Kansas as to David's half-siblings, aged six and two. The study revealed that the half-siblings had been placed outside the home, but that the mother was cooperating in rehabilitative services and working toward reunification of the family. As far as we can tell from the record, David is not a subject of the Kansas dependency proceedings.
¶ 4 The trial court dismissed the petition, stating, "if custody of this child is to be modified, it must be done either through [Domestic Relations] court or the Kansas court involved in the dependency proceedings." From the trial court's more extended comments, we gather that its ruling had two bases. In part, we understand the court to have rejected, as a matter of law, the assertion that the father's lack of legal custody amounted to a dependency within the meaning of the Arizona statute. In further part, we understand the court to have declined to exercise jurisdiction in deference to other, more suitable, courts. We decide the case on the first ground, reviewing the trial court's legal determination de novo. Arizona Dep't of Economic Security v. Ciana H., 191 Ariz. 339, 341-42, 955 P.2d 977, 979-80 (1998).
¶ 5 A dependent child is one "[i]n need of proper and effective parental care and control and who has ... no parent or guardian willing to exercise or capable of exercising such care and control." Ariz.Rev.Stat. Ann. ("A.R.S.") § 8-201(13)(a)(i). It was undisputed in these proceedings that David's father was willing to exercise parental care and control. It was also undisputed that he was capable of exercising parental care and control in the sense that he was fit to do so. The legal question narrows to whether his present lack of legal custody renders him incapable within the meaning of the statute. We hold that it does not.
¶ 6 Appellant argues that David's legal dependency is established by In the Matter of the Appeal in Pima County Juvenile Action No. J-77188, 139 Ariz. 389, 678 P.2d 970 (App.1983). There, a juvenile division of the superior court had dismissed a dependency petition, concluding that the petition raised visitation issues that should be handled in a pending proceeding in a domestic relations division of the court. The domestic relations division had issued orders permitting a father to have visitation with the child. The dependency petitioner, DES, asserted that the father was sexually abusive and that the *618 visitation order rendered the mother legally incapable of protecting the child. DES offered expert opinion evidence in support of its allegation. Because the domestic relations division was on vacation, it was unavailable to conduct a hearing on the allegation of danger to the child before visitation was scheduled to proceed. Under the circumstances, this court held, DES had reasonably initiated a dependency proceeding and the juvenile court had erred in dismissing its petition.
¶ 7 There are good reasons to construe J-77188 narrowly. A domestic relations division of the superior court can conduct an emergency hearing on a visitation issue as speedily as a juvenile division can conduct a dependency hearing, and it is commonplace during judicial vacations to place another division on call to cover emergency matters. The circumstances would be rare and exigent, in our opinion, that would favor initiating a dependency proceeding in a visitation dispute in preference to petitioning to reopen the domestic relations proceeding to modify the challenged visitation order. Accepting J-77188 at face value, however, we find it distinguishable and not controlling. There, the petition alleged a risk of imminent harm to the child, and it appeared that no domestic relations division could hear the matter in time to relieve that risk. Here, in contrast, there was no alleged risk of imminent harm. David had been residing with his father in a stable, safe environment, there was no present threat to the status quo, and the father was free to seek a modification of custody, temporary or permanent, in an appropriate domestic relations court.
¶ 8 Appellant also relies on In the Matter of the Appeal in Maricopa County Juvenile Action No. JD-500200, 163 Ariz. 457, 788 P.2d 1208 (App.1989), but we find that case distinguishable too. There, DES initiated a dependency to remove a child from the home of an unfit mother. The mother was unmarried, no father was identified on the child's birth certificate, and the child's paternity had never been established. DES placed the child in the physical custody of a putative father, who proved to be a willing and able custodian. The putative father then moved to dismiss the dependency, asserting that it was unnecessary for him to establish paternity in order to qualify under the dependency statute as a parent capable of exercising care and control. The only relevant factors, he argued, were "his undisputed willingness and proven ability to physically care for" the child. Id. at 459, 788 P.2d at 1210. The trial court, rejecting this argument, declined to dismiss the dependency, and this court affirmed, explaining that, in the absence of a dependency, unless and until the putative father established paternity, he could neither legally contend for custody of the child nor retain custody and protect the child in the face of a custodial challenge by the mother. See id. at 460-61, 788 P.2d at 1211-12.
¶ 9 The appeal in JD-500200 was framed to make determinative the question whether a putative father must establish paternity in order to qualify as a parental custodian under a dependency statute that requires a parent or guardian willing and able to exercise care and control over a child. See A.R.S. § 8-201(13)(a)(i). Here, in contrast, fatherhood is undisputed, and the father clearly qualifies as a parent able to seek legal custody of the child.
¶ 10 In conclusion, the juvenile court correctly dismissed this dependency, in our view, because the statutory elements of a dependency were not alleged. David had a parenthis fatherwho was willing and fit to parent him, there were no legal obstacles to prevent the father from seeking a custody award in an appropriate forum, and there were no exigent circumstances that required the juvenile court to interpose a dependency before such custody proceedings could take place. For the foregoing reasons, the juvenile court's decision is affirmed.
CONCURRING: THOMAS C. KLEINSCHMIDT, Judge, and E.G. NOYES, JR., Judge.